UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| HATTIE M. VEASEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11-CV-467 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On March 9, 2012, Plaintiff Hattie M. Veasey ("Veasey") filed her complaint in this

Court.  On April 16, 2012, Veasey filed her opening brief asking this Court to enter judgment in

her favor or remand this matter to the Commissioner.  On July 26, 2012, Defendant

Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed his response brief.

Veasey filed no reply brief.  This Court may enter a ruling in this matter based on the parties'

consent.  28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

## I.  PROCEDURE

On December 9, 2008, Veasey filed her application for Title II disability insurance

benefits pursuant to 42 U.S.C. § 423.  On February 11, 2009, Veasey also filed a Title XVI

application for supplemental security income pursuant to 42 U.S.C. § 1382.[1]  In both

applications, Veasey alleged disability beginning August 28, 2008.  Her claims were initially

---

[1] The regulations governing disability insurance benefits and supplemental insurance benefits are codified independently, but those relevant to this case are virtually identical.  Therefore, this opinion will cite solely to the regulations governing disability insurance benefits found at C.F.R 20 §§ 404.1500–.1599.  The parallel supplemental security income regulations may be found at 20 C.F.R. §§ 416.900–.999.

denied on June 5, 2009, and also upon reconsideration on July 31, 2009. Veasey appeared at a hearing before an administrative law judge ("ALJ") on November 4, 2010.

On February 24, 2011, the ALJ issued a decision determining that Veasey was not disabled. The ALJ found that Veasey met the insured status requirements of the Social Security Act; that Veasey had not engaged in substantial gainful activity since August 28, 2008; that Veasey had physical impairments considered to be severe; and that Veasey was unable to perform any past relevant work. Nevertheless, the ALJ determined that Veasey's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also found that Veasey retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b). However, the ALJ held that Veasey can never climb ladders, ropes, or scaffolds; can only occasionally climb, kneel, crouch, and crawl; can occasionally reach overhead with her left upper extremity; and can frequently but not repetitively perform handling and fingering bilaterally. Furthermore, the ALJ found that although Veasey is unable to perform her past relevant work, there are jobs that exist in significant numbers in the national economy that Veasey can perform.

On October 14, 2011, the Appeals Council denied Veasey's request for review of the ALJ's decision, thus making it the Commissioner's final decision. *See* 20 C.F.R. § 404.981; *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Veasey filed a complaint in this Court on March 9, 2012, seeking review of the ALJ's decision. The specific issues raised by Veasey were whether the ALJ properly determined that Veasey's mental impairment was not severe; whether the ALJ properly assessed the physical limitations caused by Veasey's neck and shoulder; whether the ALJ properly evaluated Veasey's credibility; and whether the ALJ erred in

determining that Veasey could perform other work.  For the reasons stated below, the Court

denies Veasey's motion to reverse or remand.

II.    ANALYSIS

   A.    Facts

       1.    Veasey's Vocational and Educational Background

Veasey was fifty-two years old on the alleged disability onset date and fifty-five years

old at the time the ALJ denied her claim.  She has an eleventh grade education and last worked

in September 2010, as a part-time certified nurse assistant.  From March 2008 until 2010, Veasey

also worked part-time at a battered women's shelter as a case aide.  Prior to this, Veasey worked

full-time at the Bureau of Prisons as a corrections officer.  Veasey had also worked nearly eleven

years at a men's clothing factory as an assembler and material handler.

       2.    Claimant's Hearing Testimony

At Veasey's hearing, she testified that she experienced pain running through her head and

down her neck and left arm, and stated that she was told that she had muscle spasms.  Veasey

stated that she could move her arms and was not limited in performing repetitive actions such as

reaching and handling; however, writing caused her veins to swell and limited her ability to lift

with her left arm.  She claimed that this pain felt like a stabbing feeling in her back and

underneath her shoulder blade.  Veasey also stated that she drops things when she gets to a

"certain limit."  She further testified that, because of this pain, she has trouble sleeping and her

arm remains swollen.  Additionally, Veasey testified that the pain caused her to take nearly all

day to complete household chores.  To relax her neck, Veasey sometimes wrapped a towel

around her neck as suggested by a doctor.  She estimated that she can walk about a mile a day

and can sit for 20 to 25 minutes and stand for about 15 to 20 minutes at a time. Veasey was prescribed a pain killer, a muscle relaxant, and an anti-inflammatory drug and took these medications daily until she ran out of them. (Tr. 47–57).

Veasey testified that at one point she had some trouble with depression after her grandmother passed away, and that she gets "a little depressed" because of her inability to hold a full-time job. (Tr. 49). However, she stated that she was not in counseling and had never received medication for depression. Veasey also testified that she has some trouble with comprehension, and that she often required assistance in completing some occupational tasks.

### 3. Veasey's Medical Evidence

The record shows that Veasey first complained of acute right neck and arm pain on February 27, 2007, after presenting herself to the emergency room. (Tr. 336). She experienced some relief after using the prescribed medication.

On July 15, 2008, Veasey visited the emergency room a second time complaining of abdominal pain and gastric reflux. However, her gastric reflux was found to be stable. During this visit, Veasey also reported that the muscle relaxant helped relieve the previously reported pain in her upper back and shoulder, and she was permitted to return to work. (Tr. 368–69).

Veasey presented herself to the emergency room for the third time on August 15, 2008, complaining of left shoulder and muscle pain. The x-rays from this visit showed minimal degenerative changes in her shoulder joint and no abnormalities in her left shoulder and spine. (Tr. 352). On August 16, 2008, the next day, Veasey complained to Healthlinc, her medical service provider, that she was experiencing soreness in her neck and upper back, but that her shoulder was feeling better. An examination indicated that Veasey had a full range of bilateral

motion of the shoulders and no numbness or tingling.  On September 12, 2008, Veasey was still taking the muscle relaxant to help with her back and shoulder, but continued to experience tightness in her upper neck and back.

Veasey underwent a consultative examination for Disability Determination Services ("DDS") with Dr. Ralph Inabit on April 13, 2009.  During this examination, Veasey stated that her level of pain was 8/10, and that because of her pain and spasms she avoided repetitive motions and lifting objects over her head.  She also stated that she believed that her pain was getting worse.  Dr. Inabit concluded that Veasey showed evidence of neck spasms and pain, left shoulder pain, motor weakness to the left extremity, chronic pain syndrome, and anxiety.  However, Dr. Inabit found that Veasey had no significant weakness and no symptoms of inflammatory pain in her left arm.  Examination tests indicated that Veasey's ranges of motion for her neck and left shoulder were reduced by less than 20 percent and that her fine and gross motor skills were intact.  (Tr. 372, 377, 381–83).

Shortly thereafter, on April 20, 2009, Dr. Dobson, a medical consultant for DDS, reviewed Veasey's medical record for the purpose of conducting a physical RFC assessment.  Dr. Dobson determined that Veasey was capable of light work and could sit or stand for six hours in an eight-hour workday; occasionally climb ladders and stairs, kneel, crouch, and crawl; and frequently balance and stoop.  In June 2009, Dr. Mangala Hasanadka, reviewed and affirmed Dr. Dobson's assessment upon reconsideration following Veasey's initial denial of disability.

Psychological consultative examiner Dr. Nancy Link performed a psychological evaluation of Veasey on June 2, 2009, based on a referral from DDS.  In her report, she noted that Veasey's behavior was withdrawn and her judgment was poor, and determined that she was

unable to manage her funds.  She also reported that, based on Veasey's subjective complaint, Veasey had been depressed nearly every day for about thirty days.  Dr. Link diagnosed Veasey with Dysthymic Disorder, or mild chronic depression.  Nevertheless, Dr. Link found that Veasey's depression only moderately impaired her work related activities and determined that Veasey's GAF score was 62, thus indicating mild symptoms of mental impairment or some difficulty in social, occupational, or school functioning, but generally functioning pretty well.[2]

Veasey was also reviewed by DDS psychological consultant Dr. Kenneth Neville on June 5, 2009.  Dr. Neville determined that Veasey had no severe mental impairments and that her alleged depression only mildly restricted her functional limitations.  Dr. Neville's assessment was  affirmed upon review on July 29, 2009, by Dr. William Shipley with DDS.

On April 15, 2010, Dr. Melvin Richardson with Healthlinc conducted a single examination of Veasey.  In Dr. Richardson's assessment, he found that Veasey demonstrated evidence of muscle weakness, nerve injury in her neck and back, muscle pain and inflammation, and spinal inflammation.  He also found that Veasey experienced a loss of range of motion in her neck with left lateral rotation and tightness and spasms in her neck muscles, but no lumps or swelling.  However, he noted that the power in her left upper extremity was only mildly diminished.  Dr. Richardson reported that Veasey's range of motion increased after he administered her with an intramuscular injection.

Four days later, on April 19, 2010, Veasey underwent an MRI examination of her neck.  The MRI produced no evidence of compression of the spinal cord, nerves, or pressure on the

---

[2] The Global Assessment of Functioning scale rates a "clinician's judgment of the individual's overall level of functioning" on a scale of 0 to 100.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Ed., Text Revision, 32, 34 (2000).

spinal column.  Furthermore, the MRI indicated only minimal degenerative changes in Veasey neck.

4.     <u>Vocational Expert's Testimony</u>

The vocational expert ("VE") testified that Veasey was unable to perform any past relevant work but had acquired work skills from past relevant work experiences.  More specifically, the VE determined that Veasey acquired skills from her work experiences as a case aide, corrections officer, and nurse assistant.

The VE determined that Veasey acquired the following skills from her experience as a case aide:  social perceptiveness, speaking, talking to other to effectively convey information, active listening, service orientation, and problem identification.  The VE determined that Veasey acquired the skills of social perceptiveness, speaking, information gathering, problem identification, active listening, identification of key causes, judgment and decision making, systems perception, information organization, and coordination during her employment as a corrections officer.  Finally, the VE determined that Veasey acquired the skills of service orientation, active listening, speaking, social perceptiveness, writing, and coordination during her experience as a nurse assistant.

The VE further testified that an individual with the same age, education, past relevant work experience, and RFC as Veasey could perform the following occupations: Food Management Aide (56,000 jobs nationally; 1,125 in State of Indiana); Jailer (102,400 jobs nationally; 2,100 in the State of Indiana); Patrol Conductor (50,500 jobs nationally; 1,050 in the State of Indiana); and Companion (173,750 jobs nationally; 4,350 in the State of Indiana) (Tr. 280–283).  The ALJ affirmed the VE's determination.

**B.     Standard of Review**

In reviewing disability decisions of the Commissioner of the Social Security, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and based on the proper legal criteria.  42 U.S.C. § 405(g); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny the benefits."  *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001).  A reviewing court may not substitute its own opinion for that of the ALJ's or re-weigh evidence; however, "the ALJ must build a logical bridge from the evidence" to her conclusion.  *Haynes*, 416 F.3d at 626.  The ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues."  *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

To be eligible for disability insurance benefits or supplemental security income, a claimant must establish that she is disabled.  42 U.S.C. § 423(a)(1)(D).  The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations provide a five-step sequential evaluation process to determine

whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider whether: (1) the claimant is presently employed at a substantial gainful level; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairments meet or equal any impairment listed in the regulations; (4) the claimant is able to perform her past relevant work given her residual functional capacity (RFC); and (5) the claimant can adjust to other work in light of her RFC given her age, education, and experience. *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either Step Three or Five. *Briscoe*, 425 F.3d at 351–52. At Step Three, if the impairment meets or equals any of the severe impairments listed in the Social Security Regulations, the impairment is acknowledged by the Commissioner and the claimant is determined to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, subpart P, app. 1. If the impairment is not listed, the ALJ must assess the claimant's RFC, which is used to determine whether the claimant can perform her past work under Step Four and whether the claimant can perform other work under Step Five. 20 C.F.R. § 404.1520(e)–(g). "The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young*, 362 F.3d at 1000. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1)*; Young*, 362 F.3d at 1001. The claimant bears the burden of proving Steps One through Four, whereas the burden at Step Five is on the Commissioner. *Young*, 362 F.3d at 1000.

C.    **Issues for Review**

There are four issues that this Court must resolve:  (1) whether the ALJ erred in finding that the claimant's mental impairment was not a severe impairment; (2) whether the ALJ's RFC determination properly evaluated the claimant's physical limitations of her neck and shoulder; (3) whether the ALJ properly evaluated the claimant's credibility; and (4) whether the ALJ made a proper Step Five determination regarding claimant's ability to do other work.

1.    **Substantial evidence supported the ALJ's Step Two finding that Veasey's mental impairment was not a severe impairment.**

Veasey contended that the ALJ's determination in its Step Two finding that her mental condition was not severe was not based on substantial evidence.  She argued that, although the ALJ found that she satisfied the Step Two requirement by demonstrating that she had severe physical impairments, the ALJ should have also determined that Veasey's mental impairment was severe.  In making her argument, Veasey relied primarily on her consultative examination by Dr. Nancy Link, who reported that Veasey claimed to be depressed every day for at least thirty days.  Dr. Link also reported that Veasey's behavior was withdrawn, her insight was limited, and her judgment was poor.  Veasey further pointed to Dr. Link's determination in her report that Veasey's ability to conduct work related activity was moderately impaired.

Under Step Two, the ALJ must consider whether the claimant's impairment or combination of impairments is a severe impairment.  20 C.F.R. § 404.1520(a)(4).  An impairment is severe if it significantly limits one's ability to perform work activities.  20 C.F.R. § 404.1520(c).  The mere existence of certain diagnoses and symptoms do not require the ALJ to determine that an impairment is severe.  *Skinner*, 478 F.3d at 845.  The burden is on the claimant to prove that an impairment is severe.  *Zurawski*, 245 F.3d at 885–86.

10

Despite Veasey's contention, the ALJ appropriately considered Dr. Link's findings in concluding that Veasey's mental impairment was not severe. The ALJ acknowledged Dr. Link's report that Veasey had the ability to clean herself and take care of household chores. (Tr. 21–22). The ALJ also considered several other determinations in Dr. Link's report, including that Veasey suffered from Dysthymic Disorder, or mild chronic depression; that Veasey's GAF score was 62, indicating that Veasey only showed mild symptoms of depression or difficulty in social or occupational functioning and that she was generally functioning pretty well; and that Veasey's depression caused only a moderate impairment to work related activities. (Tr. 22).

However, the ALJ's determination that Veasey's mental impairment was not severe was not solely based on Dr. Link's report. The ALJ considered the record as a whole, including the fact that Veasey never received or sought treatment for a mental impairment. (Tr. 22). The ALJ also acknowledged and gave particular weight to the June 2009 opinion of Dr. Kenneth Neville, the psychological consultant for DDS, who determined that, based on the totality of credible evidence, Veasey had only mild restriction in each of the Paragraph B criteria and her ability to work was not significantly limited, thus indicating that she did not have a severe mental impairment. (Tr. 22–23).[3] Dr. Neville's determinations were later affirmed by Dr. William Shipley with DDS upon review.

---

[3] The Paragraph B criteria, used to assess the severity of mental impairments, is satisfied when a claimant proves an impairment results in at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. 20 C.F.R. Part 404, subpart. P, app. 1 § 12.04B; 20 C.F.R. § 404.1520a. If a claimant's degree of limitation in the first three criteria is rated as "none" or "mild" and "none" in the fourth criteria, it is generally concluded that a mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). Neville determined that Veasey's mental impairment caused no more than "mild" limitation in the first three criteria and no episodes of decompensation (Tr. 22).

Additionally, the ALJ heavily weighed the fact that Veasey worked during most of the relevant time period since claiming disability. For an impairment to be considered severe, it must significantly limits one's ability to perform work activities. 20 C.F.R. § 404.1520(c). A determination by the ALJ that a claimant's depression and Dysthymia are not severe impairments is supported by substantial evidence when the claimant is not receiving treatment for these mental conditions and when the claimant is able to work despite these impairments. *Kasarsky v. Barnhart,* 335 F.3d 539, 544 (7th Cir. 2002). Based on Veasey's work history, it is unquestionable that Veasey was able to work despite her depression and Dysthymia, and there is nothing in the record indicating that Veasey was receiving treatment for these impairments. Thus, such evidence demonstrates that Veasey's mental impairments were not severe.

The ALJ concluded that Veasey's mental impairment only mildly restricted her ability to perform work related activities and was therefore not severe (Tr. 22–23). This determination was based on relevant evidence adequate to support such a conclusion. The ALJ considered the record as a whole, including the reports of Dr. Link and Dr. Neville, as well as Veasey's employment history and lack of evidence of previous treatment for mental impairments. Therefore, taking these considerations in combination, the ALJ's determination that Veasey's mental impairment was not a severe impairment was based on substantial evidence.

However, even if the ALJ's finding was not based on substantial evidence, such a determination would be harmless and would not change the ultimate outcome of Veasey's case. The ALJ previously determined that Veasey suffered from three severe physical impairments. When an ALJ determines that a claimant suffers from a severe impairment or combination of severe impairments, a determination that an impairment is not severe is "of no consequence" so

long as the ALJ considers all of the claimant's severe and non-severe impairments in determining her RFC at Step Four of the evaluation. *Castile v. Astrue*, 617 F.3d 923, 926–27 (7th Cir. 2010). In this case, the ALJ's decision that Veasey's mental impairment was not severe did not prevent the ALJ from continuing the five part sequential evaluation of Veasey's claim, and the ALJ properly considered Veasey's mental condition as well as other severe and non-severe impairments in making its RFC determination.

### 2. The ALJ's RFC assessment of Veasey's neck and shoulder limitations was based on substantial evidence.

Veasey challenged the ALJ's RFC evaluation arguing that the ALJ did not adequately address the limitations caused by her neck and shoulder. She contended that, based on the medical evidence, her ability to use her left shoulder is much more limited than determined by the ALJ. Veasey concluded that the combination of a neck and shoulder impairment generally results in functional limitations and, thus, her RFC should be reevaluated.

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record. 20 C.F.R. § 404.1545. The record may include medical signs, diagnostic findings, the claimant's statements about the severity and limitations of symptoms, statements and other information provided by treating or examining physicians and psychologists, and any other relevant evidence. SSR 96-7p. "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." SSR 96-8p. However, it is the claimant's responsibility to provide medical evidence showing how her impairments affect her functioning. 20 C.F.R. § 404.1512(c). Therefore, when the record does not support specific physical or mental limitations or restrictions on a claimant's

work-related activity, the ALJ must find that the claimant has no related functional limitations. SSR 96-8p.

The ALJ concluded that Veasey suffered from the following severe impairments: mild degenerative disc disease in the spine, mild left shoulder osteoarthritis, and muscle weakness and inflammation. However, Veasey argued that medical evidence demonstrated more severe limitations in her neck and shoulder. Veasey cited the April 2009, examination report of Dr. Inabit, in which he noted that Veasey complained of marked pain and discomfort in her left arm and diagnosed Veasey with chronic pain and motor weakness in her upper left extremity. However, Veasey failed to recognize that, while the ALJ considered these findings, the ALJ also acknowledged Dr. Inabit's determination that there was no inflammatory pain in Veasey's neck nor marked weakness in her left arm on examination. (Tr. 25). The ALJ's opinion also clearly noted Dr. Inabit's finding that Veasey had no history of orthopedic or neurological examinations and very little treatment, thus indicating a lack of evidence of persistent limitations caused by these ailments. (*Id*.). Furthermore, the ALJ considered Dr. Inabit's determination that Veasey's gross and fine motor skills were intact and the ranges of motion of her left shoulder and neck were reduced less than 20 percent. (*Id*.).

In continuing her argument that her neck and shoulder ailments were significantly limiting, Veasey cited the April 2010, examination report by Dr. Richardson. Particularly, she cited Dr. Richardson's report that Veasey demonstrated pain during several tests performed on her left shoulder and his finding that there was evidence of muscle weakness, nerve injury in her neck and back, muscle pain and inflammation, and inflammatory neck pain. Nevertheless, Veasey failed to thoroughly discuss the results of an MRI on her neck performed a few days later

14

on April 19, 2010, which the ALJ specifically acknowledge.  More particularly, the ALJ noted

that the results of the MRI demonstrated only minimal degenerative changes to Veasey's neck

and no evidence of pressure on the spinal column, inflammation, or spinal injury.  (Tr. 26).  The

ALJ also discussed Dr. Richardson's finding that the power in Veasey's left arm was only mildly

diminished and that Veasey showed improvement after an intramuscular injection, demonstrating

increased range of motion and no other symptoms.  (Tr. 26).

Veasey argued "that a neck and shoulder impairment generally result in bilateral

limitations using the hands and arms for reaching, grasping, handling and fingering."  Doc. No.

17 at 4.  However, such a conclusion is a leap in logic.  *See Schmidt v. Barnhart*, 395 F.3d 737,

745–46 (7th Cir. 2005) (finding that the mere presence of a condition that is known to cause

certain symptoms does not mean that the condition actually caused the symptoms in the

claimant).  Nothing in the medical record indicates that Veasey experienced any of these

limitations to the extent she claims, or that her impairments actually caused these symptoms.

While the ALJ acknowledged the opinions presented in Veasey's arguments, it also found a lack

of objective medical evidence or record medical opinions indicating that Veasey's impairments

resulted in more than a minimal functional limitation of her left upper extremity.  (Tr. 27).  The

ALJ considered all relevant evidence in the case record in making this determination.  Despite

the lack of evidence of Veasey's alleged functional limitations, the ALJ charitably extended

Veasey the benefit of the doubt and restricted her to only occasional reaching overhead with her

upper left extremity and frequent but not repetitive handling and fingering.  (Tr. 27).  Therefore,

the ALJ's assessment of Veasey's RFC with respect to her neck and shoulder impairments was

based on substantial evidence consistent with the record as a whole.

### 3.    The ALJ's determination of Veasey's lack of credibility was reasonably supported and articulated and was not patently wrong.

Veasey challenged the ALJ's credibility determination and asserted that the ALJ did not properly evaluate or analyze her credibility with regard to her limitations. At her hearing on November 4, 2010, Veasey stated that she experienced pain that ran down her head and neck into her left arm. She claimed that small tasks, such as tying her shoes, caused her hands to swell and remain swollen, and that she often drops things when it gets to a "certain limit." She said that the pain felt like someone was stabbing her in the back underneath her shoulder blade. Veasey attributed her inability to maintain employment to the physical restrictions caused by this pain.

The ALJ must follow a two-step process in assessing a claimant's subjective symptoms. SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that can be shown by acceptable medical evidence and can be reasonably expected to produce the claimant's pain or other symptoms. *Id.* Second, after showing an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must evaluate the intensity, persistence, and limiting effects of the impairment to determine the extent to which the symptoms limit the claimant's ability to work. *Id.* Whenever a claimant's statement about the symptoms and limitations of her impairment are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id.*

An ALJ's decision regarding a claimant's credibility must provide specific reasons for the credibility finding, must be supported by evidence in the record, and must be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight the ALJ gave to the claimant's statements and the reasons for that weight. SSR 96-7p. Because an ALJ is in

the best position to assess a witness' truthfulness, an ALJ's credibility determination will only be overturned if it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310–11 (7th Cir. 2012). An ALJ's credibility determination will only be considered patently wrong when it lacks any explanation or support. *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008).

Veasey contended that the ALJ improperly evaluated the credibility of her testimony against the RFC as opposed to the evidence in the record, and that the ALJ's finding contained no analysis. The ALJ concluded that Veasey's medically determinable impairments could reasonably be expected to cause Veasey's alleged symptoms associated with her pain. (Tr. 25). However, the ALJ determined that Veasey's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." (*Id.*). In her argument, Veasey correctly stated that a credibility assessment by the ALJ relying solely on such language has been rejected by the Seventh Circuit. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). However, the Seventh Circuit will uphold credibility findings when this language is applied to the evidence in the record. *Id.* at 915–16; *see also Castile*, 617 F.3d at 929–30; *Richison v. Astrue*, 462 Fed. Appx. 622, 625–26 (7th Cir. 2012). In this case, Veasey failed to recognize that the ALJ did, in fact, properly apply this language to the record evidence.

Although the ALJ acknowledged that Veasey suffered some pain from her medical impairments, she determined that Veasey's statements regarding the extent of her limitations were not completely credible because they were inconsistent with medical evidence. An ALJ determination that a claimant is not credible is adequately explained and supported by the record when her "complaints of extreme pain [are] inconsistent with the findings of all the doctors who

examined [the claimant] and opined that she had only minimal or moderate limitations."
*Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2005).  Additionally, an ALJ's
consideration of a claimant's failure to pursue active treatment for ailments is proper in assessing
the claimant's credibility regarding the extent of her limitations.  *Schmidt*, 395 F.3d at 747.

In considering the medical evidence in the record, the ALJ specifically noted that the
symptoms that Veasey alleged were inconsistent with the findings of all the doctors who
examined her and determined that her limitations were only minimal.  Specifically, the ALJ
found no treating source opinion in the record indicating that Veasey was permanently restricted
to sedentary work, or unable to use her shoulder, arms, and hands to work.  (Tr. 26).  The ALJ
also noted that diagnostic evidence only showed minimal degenerative disc disease, and no
underlying basis for surgery or weakness at the level alleged.  (*Id*.).  Additionally, the ALJ
referenced Veasey's visit to the emergency room for left shoulder and muscle pain on August 15,
2008, where she demonstrated a full range of motion of her shoulders and experienced no
numbness or tingling, and where x-rays showed only minimal degenerative changes in the left
shoulder.  (Tr. 25).  Furthermore, the ALJ noted Veasey's consultative examination on April 13,
2009, with Dr. Inabit, where, despite Veasey's claim that she experienced a pain level of "8/10,"
he found no marked weakness or radiating pain in her left arm and reported that her gross and
fine motor skills were intact and the ranges of motion of her neck and left shoulder were reduced
by less than 20 percent.  (*Id*.).  Moreover, the ALJ referred to Veasey's examination by Dr.
Richardson on April 15, 2010, where he reported that Veasey experienced tightness and a loss of
range of motion in the neck, but noted that Veasey's upper left extremity was only mildly
diminished and that there was no evidence of swelling.  (Tr. 26).  Finally, the ALJ noted that,

since 2008, there was no evidence that Veasey ever underwent or repeatedly sought intensive treatment for her alleged symptoms regarding her upper left extremity or neurological pain. (*Id.*)

Therefore, because the ALJ's credibility determination was reasonably supported and explained, it was not patently wrong. The ALJ effectively articulated reasons for finding that Veasey's testimony regarding the extent of her limitations was not credible. The ALJ's decision was also properly supported by record evidence and is sufficiently specific to make clear the weight given to Veasey's testimony and the specific reasons for that weight. For these reasons, this Court finds that the ALJ did not err in its evaluation of Veasey's credibility.

4.      **The ALJ's finding that Veasey could perform other work in the national economy under Step Five was supported by substantial evidence.**

Veasey contended that the ALJ erred in her Step Five finding. More specifically, Veasey argued that the skills identified by the vocational expert ("VE") are not transferable because they are aptitudes rather than skills. Veasey also argued that two of the jobs identified by the vocational expert were not past relevant work, and that the skills acquired from these positions cannot be transferred to other employment. Veasey thus asserted that she has no relevant work experience or transferable skills and is therefore unable to perform the work identified by the VE.

At Step Five, the ALJ must determine whether the claimant can perform other work given her age, education, RFC, and work experience. 20 C.F.R § 404.1520(a)(4)(v). The ALJ must determine "whether the claimant has acquired skills from her past work experience, and if so, whether they would transfer to new jobs." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (*citing* S.S.R. 82-41). Transferability is determined to be most "probable and meaningful"

when "(1) the same or lesser degree of skill is required, (2) the same or similar tools or machines are used, (3) the same or similar raw materials, products, processes or services are involved." 20 C.F.R. § 404.1568(d). However, a "complete similarity of all these factors is not necessary." SSR 82-41. At Step Five, the burden is on the Commissioner "to demonstrate that the claimant can successfully perform a significant number of jobs that exist in the national economy." *Young*, 362 F.3d at 1000.

Here, the ALJ identified Veasey's employment as a nurse assistant, corrections officer, and case aide as past relevant work. Based on the VE's testimony, the ALJ found that the skills that Veasey obtained from these jobs transferred to new jobs existing in the national economy. However, Veasey argued that some of the "skills" identified by the VE regarding her past relevant work as a corrections officer are not transferable because they are aptitudes, not skills.[4] She further asserted that the transferable skills identified by the VE regarding this employment were too vague and non-specific to be considered skills. She maintained, without authority, that skills involve a training process such as college, a training manual, or vocational school.

Skills are generally defined as "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level." SSR 82-41. Furthermore, skills are "practical and familiar knowledge of the principles of an art, science, or

---

[4] As previously discussed, the skills identified by the VE that Veasey acquired from her past relevant work experience as a corrections officer were: social perceptiveness; speaking; information gathering (knowing how to find information and identifying essential information); problem identification (identifying the nature of problems); active listening (listening to what other people are saying and asking questions as appropriate); identification of key causes (identifying the things that must be changed to achieve a goal); judgment and decision making (weighing the relative costs and benefits of a potential action); systems perception (determining when important changed have occurred in a system or are likely to occur); information organization (finding ways to structure or classify multiple pieces of information); and coordination (adjusting actions in relation to other's actions). (Tr. 28).

trade, combined with the ability to apply them in practice in a proper and approved manner." *Id.* "Judgment" is considered to be an aptitude rather than a skill. *Villano*, 556 F.3d at 563–64.

While Veasey is correct in her assertion that "judgment" is not a transferable skill, the VE identified several other transferable skills that Veasey acquired during her employment as a corrections officer. (Tr. 28). Therefore, with the exception of "judgment," the skills identified by the VE regarding Veasey's previous employment as a corrections officer are indeed transferable skills. These identified skills are transferable to some of the occupations that the ALJ determined that Veasey is able to perform, particularly to the occupations of patrol conductor and jailer.

Veasey also argued that the ALJ erred in its Step Five finding when it determined that the skills she obtained during her prior employment as a case aide and nurse assistant were transferable. She claimed that neither of these positions can be considered relevant work experience because they were not performed at a substantial gainful level.

In order to constitute as past relevant work experience, the past work must have been substantial gainful activity. 20 C.F.R. § 404.1565(a). Substantial gainful activity is defined as work activity that involves doing significant and productive physical or mental activities and is done for pay or profit. 20 C.F.R. § 404.1510. The primary consideration in determining whether the claimant has engaged in substantial gainful activity is the claimant's earnings. 20 C.F.R. § 404.1574(a)(1).

The ALJ noted that Veasey's earnings in 2009 and 2010 were considerable, with arguably substantial gainful activity earnings from the fourth quarter of 2009 until the second quarter of 2010. During this particular time Veasey was employed as both a nurse assistant and

a case aide.  Nevertheless, the ALJ gave Veasey the benefit of the doubt and determined that

such employment was not substantial gainful activity.  Because the ALJ found that Veasey did

not perform her work as a case aide and nurse assistant at a substantial gainful level, neither can

be considered relevant work experience.  Therefore, the skills that Veasey acquired from these

two positions are not transferable.

Nevertheless, the ALJ's mistaken determination that Veasey's employment as a case aide

and nurse assistant were relevant work experiences is not a cause for remand.  If it can be

predicted "with great confidence" that on remand the ALJ would ultimately reach the same

decision, then such a decision by the ALJ is harmless error.  *McKinzey v. Astrue*, 641 F.3d 884,

892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Skarbek v.

Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004).  Here, although Veasey's prior employment as a

case aide and nurse assistant are not relevant work experiences and the skills acquired from these

positions are not transferrable, her skills obtained from her employment as a corrections officer,

as discussed previously, are transferable to other jobs.  Thus, it can predicted with great

confidence that the ALJ would ultimately reach the same decision that Veasey is able to perform

other work if this case was to be remanded.

Therefore, the ALJ's determination that Veasey could perform a significant number of

other jobs in the national economy given her age, education, RFC, and relevant work experience

as a corrections officer was based on substantial evidence.  Furthermore, the ALJ's errant

determination that Veasey's prior employment as a case aide and nurse assistant were relevant

work experiences and that the skills acquired in these positions were transferable to other jobs

was harmless and did not affect the ultimate outcome of this case.

## III. CONCLUSION

This Court concludes that the ALJ's decision is supported by substantial evidence and based on the proper legal criteria. The ALJ's determination that Veasey's mental impairment was not severe was supported by substantial evidence. In addition, the ALJ's assessment of Veasey's neck and arm impairment was supported by sufficient medical evidence and was properly assessed. Furthermore, the ALJ's evaluation of Veasey's credibility was reasonably supported and articulated and was not patently wrong. Finally, the ALJ's determination that Veasey could perform other jobs within the national economy given her age, education, RFC, and relevant work experience was based on substantial evidence, and inaccurate determinations concerning Veasey's relevant work experience amount to no more than harmless error. Therefore, Veasey's motion to reverse or remand is **DENIED**. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 19th day of November, 2012.


 s/Christopher A. Nuechterlein 
Christopher A. Nuechterlein
United States Magistrate Judge